753 So.2d 1258 (2000)
THE FLORIDA BAR, Complainant,
v.
Julius L. WILLIAMS, Respondent.
Nos. SC92890, SC94111.
Supreme Court of Florida.
February 24, 2000.
*1259 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and Patricia Ann Toro Savitz, Bar Counsel, Tallahassee, Florida, for Complainant.
Julius L. Williams, pro se, Orlando, Florida, for Respondent.
PER CURIAM.
We have for review a referee's report finding ethical breaches by respondent, Attorney Julius L. Williams, and recommending disciplinary measures after The Florida Bar filed two separate complaints against Williams. We have jurisdiction. See art. V, § 15, Fla. Const.
Upon agreement by the parties, the referee consolidated the Bar's cases against Williams. After a hearing, the referee made the following findings of fact and conclusions of guilt:

CASE NUMBER SC92890

Julien Matter
In May 1997, Gregory Julien employed Williams to handle a bankruptcy matter. Julien paid Williams $500 in legal fees and $175 in filing fees. Testimony differed as to whether Julien and Williams had further contact after the first visit. Williams did not complete the bankruptcy filing. When Williams gave Julien a personal check for $500 on October 13, 1997, representing the attorney's fees paid by Julien, the check was dishonored for insufficient funds. Williams eventually gave Julien a postal money order to cover the funds. Williams failed to return the legal fee, the filing fee and financial records to Julien until approximately February 8, 1998.
Based upon these findings, the referee found Williams guilty of violating the following Rules Regulating the Florida Bar: 4-1.3 (failing to act with reasonable diligence); 4-1.4 (failing to keep a client informed about the status of the case and failing to comply with reasonable requests for information); and 4.1-5 (collecting an excessive fee).

Trust Accounting Violations
On May 30, 1997, The Florida Bar served a subpoena duces tecum on *1260 Williams seeking his trust account records. Although cooperative, Williams failed to provide all of the documents sought. Some items, such as ledger cards or journals for the clients and ten months of bank statements for 1995, were missing altogether. Williams claimed that his ledger consisted of client cards maintained in the client files, but that many files had been lost or destroyed. Williams provided check stubs in lieu of clients' journals, but the referee concluded that they were "woefully inadequate" and Williams' trust account could not be audited.
Based upon these findings, the referee found Williams guilty of violating the following Rules Regulating the Florida Bar: 4-1.15(d) (failing to comply with Bar rules regulating trust accounts); 5-1.1(c) (failing to preserve records of trust accounts for a period of six years); 5-1.1(d) (failing to maintain the minimum required trust accounting records and follow the minimum trust accounting procedures); 5-1.2(b) (failing to maintain the minimum required trust accounting records); and 5-1.2(c) (failing to follow the minimum trust accounting procedures).

CASE NUMBER SC94111

Simmons[1]Matter

Thelma Simmons hired Williams to represent her in a lawsuit against her employer. Simmons lost the lawsuit, and sometime afterwards suffered a stroke. In its complaint, the Bar alleged that Williams had attempted to orchestrate a continuance of Simmons' pending trial by urging her to check herself into the hospital when it was medically unnecessary. Williams failed to respond to the Bar's request for a response to the Simmons matter.
Based upon these findings, the referee found Williams guilty of violating Rule Regulating the Florida Bar 4-8.4(g) (failing to respond in writing to a disciplinary agency).

Wheaton Matter
Linda Wheaton was Williams' employee. One of Williams' paychecks to Wheaton was returned for insufficient funds. Williams later paid Wheaton for the returned check and her bank fees. Williams failed to respond to the Bar's request for a response to the Wheaton matter.
Based upon these findings, the referee found Williams guilty of violating Rules Regulating the Florida Bar 3-4.3 (engaging in conduct that is unlawful or contrary to honesty and justice) and 4-8.4(g) (failing to respond in writing to a disciplinary agency).

DISCIPLINE
When recommending discipline in these two cases, the referee noted that any one of Williams' violations alone would not support suspension. However, the referee found that these violations taken together formed a pattern of negligent conduct and refusal to respond to official inquiries. The referee recommends that Williams be suspended for one year, requiring passage of the ethics portion of the bar prior to his reinstatement. The referee further recommends that Williams be placed on probation for the three years following his reinstatement. The referee recommends as a condition of Williams' probation that he complete a trust accounting workshop, and that for the first two years of his probation he provide monthly trust account records and reconciliations to a person designated by the Bar. Finally, the referee recommends that payment of the Bar's costs be made a condition of Williams' reinstatement to the practice of law.
In making the aforementioned recommendation, the referee considered the following aggravating factors: (1) an escalating pattern of misconduct; (2) multiple offenses; (3) bad faith obstruction of the *1261 disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; and (4) substantial experience in the practice of law. The referee noted that Williams was admonished in 1995, publicly reprimanded in 1996, and suspended for twenty days followed by a one-year probation in 1997. The referee found the following mitigating factors: (1) absence of a dishonest or selfish motive, and (2) timely or good faith effort to make restitution in the Wheaton case.

GUILT
Williams alleges that several of the referee's conclusions of guilt are not supported by competent substantial evidence. A party contesting a referee's findings of fact and conclusions of guilt "carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996). Further, where competent substantial evidence supports the referee's findings of fact and conclusions concerning guilt "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Id. Applying this standard of review, we find Williams' arguments to be without merit.
First, as to count one of case SC92890, Williams claims that he did work on behalf of Julien and maintained contact with him. However, at the hearing Julien testified that Williams never filed any documents in his bankruptcy case. Julien further testified that after his initial meeting with Williams on the bankruptcy case, Williams never called him or met with him. Julien's current attorney, Irwin Sperling, testified that he never had any direct correspondence from Williams. This testimony provides competent, substantial evidence that Williams failed to file documents on Julien's behalf and failed to maintain adequate contact with his client. See Florida Bar v. Herzog, 521 So.2d 1118, 1119-20 (Fla.1988) (finding that where testimony conflicts concerning the disputed issues, "[t]he referee, as our fact finder, properly resolves conflicts in the evidence").
Second, as to count two of case SC92890, Williams argues that there is no evidence to show that he did not keep the required records. However, the Bar's chief auditor, who was accepted by the referee as an expert in the field of trust accounting without objection by Williams, testified that he could neither complete a compliance audit nor recreate a trust history of Williams' accounts due to the sheer incompleteness of the documents provided by Williams. He concluded that in his opinion, Williams was not in compliance with the rules governing trust accounts. Given the testimony of the auditor and Williams' failure to produce the records that the Bar requested (and that are required under the rules), Williams' arguments are not sufficient to demonstrate that the referee erred in recommending that he be found guilty of violating the Bar's rules regarding trust accounting procedures.
Finally, as to count two of case SC94111, Williams argues that giving a check to Wheaton when there were insufficient funds to cover the check was not a deliberate act.[2] However, this Court has held that "the issuance of a worthless check by an attorney constitutes unethical conduct and subjects the attorney to professional discipline by the Florida Bar." *1262 Florida Bar re Roberts, 721 So.2d 283, 285 (Fla.1998) (quoting Florida Bar v. Davis, 361 So.2d 159, 162 (Fla.1978)). Writing worthless checks, even where restitution is made, "burdens the recipients and is fundamentally dishonest. It brings disrepute on the writer and the profession. It is inconsistent with fitness to practice law." Id. at 285 (quoting Florida Bar re Lopez, 545 So.2d 835, 837 (Fla.1989)). Further, in Florida Bar v. Dingle, 235 So.2d 479, 480 (Fla.1970), an attorney charged with writing a worthless check claimed that he was honest, but merely a poor bookkeeper. This Court found that "[t]his explanation may well be true but does not excuse [the attorney's] misconduct." Id. Williams admitted that he gave a worthless check to his employee and the referee's recommendation of guilt on this charge is supported by substantial competent evidence. In light of the foregoing, we find that the referee's findings of fact and conclusions of guilt are supported by substantial competent evidence in the record.

DISCIPLINE
This Court has described the standard of review of a referee's recommendation of discipline as follows: "In contrast with a review of the referee's findings of fact, which should be upheld if supported by competent substantial evidence, this Court has a broader scope of review regarding discipline because it bears the ultimate responsibility of ordering the appropriate sanction; however, a referee's recommendation is presumed correct and will be followed if reasonably supported by existing case law and not `clearly off the mark.'" Florida Bar v. Fredericks, 731 So.2d 1249, 1254 (Fla. 1999). Further, "[d]iscipline must be fair to the public and to the respondent and `must be severe enough to deter others who might be prone or tempted to become involved in like violations.'" Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989).
In assessing discipline, "this Court also considers prior misconduct and cumulative misconduct as relevant factors, and `deals more severely with cumulative misconduct than with isolated misconduct.'" Florida Bar v. Adler, 589 So.2d 899, 900 (Fla.1991) (quoting Florida Bar v. Greenspahn, 386 So.2d 523, 525 (Fla. 1980)). As such, this Court has noted that "cumulative misconduct of a similar nature should warrant an even more severe discipline than might dissimilar conduct." Florida Bar v. Rolle, 661 So.2d 296, 298 (Fla.1995) (quoting Florida Bar v. Bern, 425 So.2d 526, 528 (Fla.1982)); see also Florida Bar v. Morrison, 669 So.2d 1040 (Fla.1996).
Williams argues that a one-year suspension is too severe for a sole practitioner and that the costs of closing down his practice would be enormous. Further, Williams argues that placing additional requirements on him, such as requiring passage of the ethics portion of the bar exam prior to his reinstatement and placing him on probation after reinstatement, is an unreasonably burdensome sanction. In support of this claim, Williams argues that there is no escalating pattern of misconduct. Further, he argues that both Julien and Wheaton eventually received the funds that they were entitled to. Finally, Williams argues that the referee's failure to indicate what discipline he recommended for each of Williams' violations results in this Court's inability to review these recommendations in light of the discipline issued in other cases. Williams ultimately claims that a thirty-day suspension would be more appropriate.
Despite Williams' challenges to the referee's recommended discipline, we conclude that a one-year suspension followed by probation is reasonably supported by existing case law. In Morrison, this Court imposed a one-year suspension and required passage of the ethics portion of the bar examination where an attorney failed to pursue representation on behalf of clients and failed to cooperate with the Bar. See 669 So.2d at 1041-42. In imposing this sentence, the Court noted that *1263 Morrison had a prior history of similar misconduct. Id. at 1042. Similarly, in Rolle, this Court determined that a six-month suspension was not too severe where a private reprimand failed to deter an attorney from further engaging in similar wrongful conduct. See 661 So.2d at 298.
In Florida Bar v. Barbone, 679 So.2d 1179, 1180 (Fla.1996), this Court imposed a six-month suspension followed by two years of probation "with regular, unannounced accounting reviews at least three times a year at his expense" on an attorney for trust account violations. In addition to the suspension and probation, the Court noted that "Barbone should continue to retain a certified public accountant to provide the Bar quarterly reports showing compliance with trust accounting rules, and he is required to take and pass the Multistate Professional Responsibility Examination." Id.
In Adler, this Court suspended an attorney for eighteen months for failure to comply with the Bar's requirements for trust accounts where the attorney had a prior disciplinary history and there were multiple offenses at issue in the case. See 589 So.2d at 900. Finally, in Florida Bar v. Kassier, 730 So.2d 1273, 1274-75 (Fla. 1998), this Court imposed a one-year suspension where an attorney wrote two checks on accounts with insufficient funds and failed to respond to a subpoena issued by the Bar. As a condition of his reinstatement, this Court required Kassier to attend the Florida Bar's Ethics School, a trust accounting workshop. Id. at 1276. In imposing this sanction, the Court noted that enhanced discipline was necessary because of Kassier's prior misconduct. Id.
These cases demonstrate that enhanced discipline is permissible when multiple violations occur or the attorney has a prior history of misconduct. Further, Barbone and Kassier evidence that in the past this Court has required affirmative acts (such as retaining an accountant or attending a trust workshop) by attorneys both prior to and after reinstatement.
This Court has disciplined Williams three times in the last five years. In 1995, this Court admonished Williams for failing to properly communicate on behalf of a client with a principal in a real estate closing. See Florida Bar v. Williams, No. 83,978 (Fla. June 8, 1995). In 1996, Williams received a public reprimand for failing to represent a client with diligence and for maintaining inadequate communication with a client. See Florida Bar v. Williams, 678 So.2d 340 (Fla.1996). Finally, in 1997, Williams received a twenty-day suspension followed by a one-year probation for failing to represent a client with diligence, failing to advise a clerk's office to cease preparation of the record in an appeal, failing to cooperate with the Bar in an investigation of that matter, and misrepresentation. See Florida Bar v. Williams, 689 So.2d 1073 (Fla.1997).
With each of Williams' violations, this Court has imposed more severe discipline. Yet Williams has continued to engage in conduct that violates the Rules Regulating the Florida Bar. Further, several of the violations in the instant cases are of a similar type as his past violations (i.e., lack of communication with a client, failure to cooperate with the Bar). Given Williams' prior history of misconduct, and the multiple offenses involved in these two cases, the cases cited by Williams do not support the thirty-day suspension that Williams suggests. See Florida Bar v. Hoffer, 412 So.2d 858 (Fla.1982) (one-year suspension imposed for neglecting a client's case, for engaging in conduct prejudicial to the administration of justice, and for engaging in conduct adversely reflecting on a lawyer's fitness to practice law); Florida Bar v. Fath, 391 So.2d 213 (Fla.1980) (six-month suspension imposed on attorney with prior history of misconduct for failing to diligently pursue a case on behalf of a client). Rather, we conclude that the referee's recommendation of enhanced discipline is in accord with the case law.

*1264 COSTS

The referee recommends that costs be awarded to the Bar. Williams' objection to the Bar's costs consists of a conclusory statement that the costs are excessive and that the Bar has not provided any documentation or substantiation for these costs. However, "[t]he assessment of costs in a disciplinary proceeding is within the referee's discretion and will not be reversed absent an abuse of that discretion." Kassier, 730 So.2d at 1276. Williams provides no explanation as to how the Bar's costs are excessive, nor does he argue that the referee abused his discretion in awarding costs to the Bar. We conclude that the referee's assessment of costs was reasonable and Williams is responsible for these costs.

CONCLUSION
Accordingly, Julius L. Williams is hereby suspended from the practice of law in Florida for one year and thereafter until he has shown proof of rehabilitation, has paid the costs of the proceedings, and has passed the ethics portion of the Florida bar examination. If reinstated, Williams shall be on probation for a period of three years, during the first two of which he will be required to provide monthly trust account records and reconciliations to a person designated by the Bar. As a further condition of Williams' probation, he shall be required to complete a trust accounting workshop. The suspension will be effective thirty days from the filing of this opinion so that Williams can close out his practice and protect the interests of existing clients. If Williams notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Williams shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida, 32399, for recovery of costs from Julius L. Williams in the amount of $2,585.25, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] In the report, it appears that the referee accidentally uses the names "Simmons" and "Stevens" interchangeably.
[2] In this regard, and as noted earlier in this opinion, the referee found Williams guilty of violating rule 3-4.3 which, among other things, prohibits conduct that is "unlawful or contrary to honesty and justice." In his brief, Williams tangentially argues in a single, conclusory sentence that rule 3-4.3 "is so vague and ambiguous that no one could know what conduct is prohibited by the rule." In support of his claim, Williams only cites federal cases, with no explanation whatsoever as to how they pertain to the instant case. We reject Williams' tangential and unelaborated argument in this regard without discussion.