944 So.2d 167 (2006)
THE FLORIDA BAR, Complainant,
v.
Jerry Arthur RIGGS, Sr., Respondent.
No. SC05-973.
Supreme Court of Florida.
October 5, 2006.
Rehearing Denied November 30, 2006.
*168 John F. Harkness, Jr., Executive Director, and Kenneth L. Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, FL; and Lorraine Christine Hoffmann and Lillian Archbold, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
Kevin P. Tynan of Richardson and Tynan, PLC, Tamarac, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that Jerry Arthur Riggs, Sr., be found guilty of professional misconduct and suspended from the practice of law for three years. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings and recommendations.

FACTS
The Florida Bar filed a complaint against Riggs, alleging that he engaged in misconduct regarding client funds, committed acts involving dishonesty and misrepresentation, and violated trust account requirements. After holding a hearing, the referee issued a report in which he made the following findings and recommendations.
Count I, Rafael and Maria Suncar. Riggs represented Rafael and Maria Suncar in a Miami-Dade County residential real estate transaction. The Suncars, through Argent Mortgage, financed the purchase of a foreclosed home from the seller's lender, U.S. Bank. In November 2003, upon receipt of the funds from Argent Mortgage, Riggs was obligated to satisfy the U.S. Bank mortgage, a second mortgage to American General Home Equity, and certain other obligations. However, after Argent Mortgage wired $171,174.58 to Riggs's trust account for the purposes of closing, he failed to pay the $118,000 U.S. Bank mortgage. Riggs did not and has not remitted these proceeds. The Suncars did not receive satisfaction of the U.S. Bank mortgage, although they did receive satisfaction on a second mortgage through American General Home Equity for $9000.
In February 2004, Riggs learned that a third-party bidder was attempting to purchase the Suncars' home in accordance with U.S. Bank's foreclosure. Riggs contacted the Attorneys' Title Insurance Fund (ATIF), of which he was a member, to inform it that he no longer possessed the Suncars' funds to satisfy the U.S. Bank mortgage. He claimed that a dishonest employee had victimized him. After numerous hearings, ATIF satisfied the U.S. Bank mortgage and suspended Riggs's ability to underwrite title insurance. Riggs has repaid ATIF approximately $10,000 of the $118,000 debt.
Based on these findings, the referee found that Riggs violated the following provisions of the Rules Regulating the Florida Bar: rules 4-1.3(a lawyer shall act with reasonable diligence and promptness when representing a client); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); 5-1.1(b)(client money or other property that the lawyer has in his control, which is not subject to setoff for attorneys fees, shall be accounted for and delivered to the client; if not, it shall be deemed conversion); and 5-1.1(e)(upon receiving *169 client funds, the lawyer shall promptly notify the client and render full accounting).
Count II, Other Transactions. After Riggs failed to respond to the Bar's request for his Bank of America (Bank) records for his "Client Account," the Bar subpoenaed the Bank. Riggs requested that the Bank deny the requested records. Thereafter, Riggs sought representation by an attorney, who tendered some of the trust account records to the Bar and lifted the restrictions on the Bank's subpoena. As a result, the Bar completed an audit reviewing Riggs's bank accounts, but primarily reconstructing his real estate trust account and IOTA trust account for the period of October 2002 through December 2003.
The Bar's audit revealed various incidents of account mishandling. Based solely on the Suncar matter, there was a $108,836 shortage in Riggs's real estate trust account as of December 2003. The real estate trust account only had a balance of $15,194, while Riggs still had a $124,030.71 liability to the Suncars. Also, Riggs failed to remit over $1300 in insurance concerning another matter, identified as the "Batista/Rutledge" closing, which he handled in December 2003. Furthermore, Riggs deposited several "fees" or "attorney fees" checks into the trust accounts during the audit period. Depositing earned fees into a trust account is a violation of the Rules Regulating Trust Accounts. Additionally, Riggs deposited checks concerning personal matters into his real estate trust account. Riggs paid personal expenses totaling $18,959 from his trust accounts, including payments for employee salaries, furniture, office equipment, automotive repairs, cabinets, and a gift to a relative. The audit also revealed Riggs transferred and commingled funds between multiple accounts for no apparent reason. For example, Riggs transferred a $4000 fee related to the "Murphy case" from the IOTA account to the real estate trust account without explanation. Riggs also deposited escrow funds from various other clients into his operating account and savings account and made numerous online transfers between accounts.
Because the account transfers were not fully identified by name or purpose, the Bar's auditor was sometimes unable to identify the case related to the transfers. As a result, the Bar requested by letter in August 2004 that Riggs identify the client names and matters relating to the transfers. Riggs did not provide a complete written response. Thus, Riggs's noncompliance with the Bar's request renders him in violation of rule 4-8.4(g)(a lawyer shall not fail to respond in writing to any official inquiry by bar counsel or disciplinary agency).
In addition, during December 2003 to March 2004, Riggs's trust account balances were negative, sometimes by over $9700. As a result, trust account checks were returned for insufficient funds. Riggs had overdraft protection on his real estate trust account, which was linked to his savings account. The Florida Bar Rules Regulating Trust Accounts prohibit overdraft protection. Rule 5-1.2(c)(4) states that a lawyer shall authorize and request any bank where the lawyer is a signatory on a trust account to notify the Bar's staff counsel of any trust check returned due to insufficient or uncollected funds. Riggs did not direct the Bank to follow this requirement. Also, Riggs did not notify the Bar of any trust check returned for insufficient or uncollected funds, as is required pursuant to the rules. Although Riggs was not in compliance with the rules applicable to lawyer trust accounts, he certified on his 2001-2002 and 2003-2004 Florida Bar Annual Membership Fees Statements *170 that he read and was in compliance with such rules.
Based on these facts, the referee found Riggs violated rules 4-1.15 (a lawyer shall comply with the Florida Bar Rules Regulating Trust Accounts), 4-8.4(c)(a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 5-1.1(a)(1)(no commingling of funds), 5-1.1(g)(2)(all nominal and client short-term funds shall be placed in an IOTA and each Florida lawyer must annually certify, in writing, that he is in compliance with or exempt from the rule provisions), and 5-1.2(b)(1) and (c)(noncompliance with minimum trust accounting records).
Riggs testified that the trust account shortages were due to a $13,902.87 overpayment to Dr. Rex Allen for a real estate closing and the misconduct of his former employee, Tammy Campbell. Riggs claimed Campbell stole the account funds. The referee did not find that Campbell was responsible for the missing funds. The facts found by the referee demonstrate that Riggs handled the refinancing of Campbell's home in December 2003, approximately one month after the Suncars' closing. Riggs asserted that Campbell was able to steal the funds due to the refinancing. To support this argument, he testified that he filed an incident report with the police alleging Campbell engaged in theft and forgery. However, Riggs did not file the report with police until August 2005, which was two months after the Bar filed the disciplinary complaint and over eighteen months after the Suncars' funds disappeared in 2003. After considering the evidence, the referee concluded that Riggs failed to adequately supervise Campbell and failed to properly maintain his trust account.
Sanction. With regard to recommending a disciplinary sanction, the referee found three mitigating and three aggravating factors. In aggravation, the referee found: (1) prior discipline; (2) dishonest or selfish motive; and (3) substantial experience in the practice of law. In mitigation, the referee found: (1) character or reputation; (2) imposition of other penalties or sanctions; and (3) remorse.
As to discipline, the referee recommended that Riggs (1) receive a three-year suspension; (2) undergo probation for three years from the date of reinstatement, during which he must hire a certified public accountant to conduct monthly reviews of his trust accounts, submit quarterly reports to the Bar certifying that he is in compliance with trust accounting requirements, submit to random audits of his accounts by the Bar, and bear the costs associated with these terms of probation; (3) pay for and attend The Florida Bar's Trust Accounting Workshop as a condition precedent to reinstatement; and (4) pay the Bar's costs of $13,729.65.
Riggs petitioned for review of the referee's report.

ANALYSIS
First, Riggs challenges the referee's findings of fact and conclusion that he violated rule 4-8.4(c)(a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation). Riggs claims the Suncar mortgage was not satisfied because of insufficient funds in the trust account. He continues to argue the shortage was due to theft by his former paralegal, Campbell, and an overpayment to Dr. Allen. Although Riggs admits that he had an obligation to properly supervise Campbell, he asserts that he should not be found guilty of violating rule 4-8.4(c) because his failure to supervise Campbell was unintentional conduct.
Generally, a referee's finding of fact regarding guilt carries a presumption of correctness that should be upheld unless *171 clearly erroneous or without record support. Fla. Bar v. Vining, 761 So.2d 1044, 1047 (Fla.2000). Riggs concedes that he is guilty of some rule violations involving commingled funds, trust account procedures, and record maintenance. However, Riggs disputes the referee's finding of a violation of rule 4-8.4(c). He claims that a rule 4-8.4(c) violation requires intent, and he asserts that he did not have intent. We agree that intent is an element of a violation of rule 4-8.4(c). We disagree, however, with Riggs's narrow interpretation of intent under the rule. Further, and contrary to Riggs's continuing arguments, the referee did not find that Campbell stole the funds.
In Florida Bar v. Fredericks, 731 So.2d 1249 (Fla.1999), the Court stated that "in order to satisfy the element of intent it must only be shown that the conduct was deliberate or knowing." Id. at 1252; see also Fla. Bar v. Brown, 905 So.2d 76, 81 (Fla.2005); Fla. Bar v. Barley, 831 So.2d 163, 169 (Fla.2002). In Fredericks, the motive behind the attorney's action was not the determinative factor. Rather, the issue was whether the attorney deliberately or knowingly engaged in the activity in question. Here, Riggs's failure to supervise his employee constitutes intent because he knowingly assigned his trust account responsibilities to Campbell and then failed to manage her activities. Knowingly or negligently engaging in sloppy bookkeeping amounts to intent under rule 4-8.4(c). See Fla. Bar v. Smith, 866 So.2d 41, 46 (Fla.2004) (holding that the respondent had the requisite intent and therefore violated rule 4-8.4(c) because she had deliberately or knowingly engaged in negligent bookkeeping). Thus, the referee's finding that Riggs violated rule 4-8.4(c) is supported by evidence in the record.
Second, Riggs argues that the referee's recommended sanction of a three-year suspension is not supported by existing case law. He claims that a ninety-day suspension is appropriate. He bases this argument on his version of the facts, which is that Campbell stole the funds. As stated above, the referee did not find that Campbell committed theft of the funds. Further, the record does not clearly demonstrate that she absconded with the account money.
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
It is well settled that the misuse of funds held in trust is one of the most serious offenses a lawyer can commit and that disbarment is presumed to be the appropriate sanction. Fla. Bar v. Travis, 765 So.2d 689, 691 (Fla.2000); see also Fla. Bar v. Tillman, 682 So.2d 542 (Fla.1996). However, there are cases involving attorney misconduct relating to client funds in which the attorneys were disciplined by lengthy suspensions instead of disbarments. See Fla. Bar v. Whigham, 525 So.2d 873 (Fla.1988)(three-year suspension). In light of the facts of this case, a lengthy suspension is the appropriate sanction.
The record indicates that Riggs commingled funds, maintained shortages in the accounts, and failed to keep adequate records. Further, the record demonstrates that Riggs failed to adequately supervise Campbell and failed to properly maintain *172 his trust account. The attorney in Whigham also failed to properly manage his trust accounts; he received a three-year suspension. Because Whigham supports the instant referee's recommended sanction of a three-year suspension, the sanction has a reasonable basis in existing case law. See Fla. Bar v. Temmer, 753 So.2d 555 (Fla.1999). Accordingly, we approve the referee's recommended discipline.

CONCLUSION
Jerry Arthur Riggs, Sr., is hereby suspended for three years, effective nunc pro tunc, May 6, 2005, the effective date of the emergency suspension in Florida Bar v. Riggs, 901 So.2d 121 (Fla.2005)(table). Also, Riggs shall pay for and attend The Florida Bar's Trust Accounting Workshop as a condition precedent to reinstatement. He shall be placed on probation for three years from the date of his reinstatement, during which he must hire a certified public accountant to conduct monthly reviews of his trust accounts, submit quarterly reports to the Bar certifying that he is in compliance with trust accounting requirements, submit to random audits of his accounts by the Bar, and bear the costs associated with these terms of probation. Riggs shall accept no new business until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Jerry Arthur Riggs, Sr., in the amount of $13,729.65, for which sum let execution issue.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.